Argued January 16, affirmed February 19, rehearing denied April 16, 1918.

## GEARIN v. ROTHCHILD BROS.

### (170 Pac. 923.)

**Landlord and Tenant—Lease—Construction.**

1. Lease provisions that the lessee's liability for a breach should be confined to forfeiting the lease, and that the lessor might re-enter without prejudicing his remedies for rental arrears, etc., *held*, when construed together, not to prevent the collection of unpaid rent.

From Multnomah: GEORGE N. DAVIS, Judge.

This is an action by M. M. Gearin against Rothchild Brothers, a corporation, for the collection of rent. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Department 1.

In October, 1906, plaintiff leased to the defendant corporation Lot 4 in Block 64, in the City of Portland, which lot is located at the northwest corner of Fourth and Washington Streets. The written contract consists of twenty-two distinct paragraphs which, when necessarily mentioned herein will be referred to by their consecutive numbers. By the terms of the agreement the lessee was to enjoy a term of twenty-three years, from April 1, 1907, to April 1, 1930, and to pay a monthly rental of $1,200 for the first twenty-one years, and a monthly rental of $1,450 during the last two years, the rent to be paid in advance upon the first day of each month. It was also agreed that the lessee should erect upon the ground a seven-story building with suitable basement, in accordance with the requirements of municipal ordinances, to be completed within one year from April 1, 1907. This building was to be the property of the lessor and be kept in-

sured at the expense of the lessee, with provision for dividing the insurance money between the parties in the event of a loss by fire. It was further agreed that a default in erecting the building should invoke a penalty of $50,000 as liquidated damages therefor, and that if a loss by fire should destroy the building when uninsured the lessee should be personally liable to the lessor to the extent of her insurable interest. It was also agreed that in the event of a total destruction of the building by fire, the lessee might elect to pay to the lessor her proportionate share of the insurance and terminate the lease or continue the lease by rebuilding the structure. There are further provisions whereby the lessee covenants to pay the taxes, street improvements, etc., and other details are provided for which are of no interest in the discussion of the case presented. Section 19 of the instrument reads thus:

"It is mutually understood and agreed that the liability of the lessee for breach of any of the covenants or agreements herein provided shall be limited to forfeiture of this lease and all of the improvements, save and except such additional penalties as are provided for failure to build or insure as hereinbefore provided."

Section 21 contains the usual form of forfeiture for breach of covenants and provides for a re-entry for such breach

"without being taken or deemed guilty in any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant."

Defendant entered into possession under the lease, erected the building within the time limited, and complied fully with all the terms of the contract until the month of March, 1916, at which time it defaulted in

payment of one half of the stipulated rental for that month, and failed to pay any portion of the rent for the month of April. Plaintiff then began this action to recover the unpaid rent. Defendant admits the execution of the lease and the default in the payment of rent, relying for its defense upon the provisions of Section 19 above set out. A trial being had in the Circuit Court without the intervention of a jury, there was a judgment for plaintiff and defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Bernstein & Cohen,* with an oral argument by *Mr. Alex. Bernstein.*

For respondent there was a brief over the names of *Mr. Martin L. Pipes, Mr. Hugh C. Gearin, Mr. John M. Pipes* and *Mr. George A. Pipes,* with oral arguments by *Mr. Martin L. Pipes* and *Mr. Gearin.*

BENSON, J.—1. There is no question of fact presented for our consideration. It is conceded that every part of the contract has been fully complied with up to the time when defendant defaulted in payment of rent for the months of March and April, 1916, and this default is admitted. The defendant relies solely upon the provisions of Section 19 of the lease, above quoted, as a protection against any action for the recovery of accrued rent. The substance of defendant's argument is that the clause referred to and relied upon by it was the expression of a distinct agreement between the parties that after the erection of the building at a cost of $85,000, that structure should serve as liquidated damages for any default upon the part of the lessee other than a failure to insure against loss by fire and that plaintiff's only remedy for a breach of covenant is to

take the necessary steps to accomplish an eviction. Upon the other hand, plaintiff urges that Section 19 is to be construed with Section 21 which, after providing in the usual form for forfeiture and re-entry by the lessor, concludes thus:

"Without being taken or deemed guilty in any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent, or preceding breach of covenant."

It is contended that these clauses may readily be harmonized so as to give effect to both. The general rule governing courts in the construction of written instruments is quite clearly expressed in a modern textbook in this language:

"In order to ascertain the true meaning of the parties to an indenture or other agreement, the construction will be upon the whole thereof, and not upon disconnected parts of it. Although the immediate object of inquiry be an isolated clause, the whole context must be considered, in order to carry out the intention of the parties. Covenants are then to be construed according to the obvious intention of the parties as collected from the whole context of the instrument containing them, and according to the reasonable sense of the words": 1 McAdam, Landlord and Tenant, 392.

Having this rule in mind, and the further obligation to give effect as far as possible to every clause of the contract, we observe that if defendant's interpretation of Section 19 is adopted, a situation is presented wherein the lessee may be permitted to retain and enjoy the possession of the property for an indefinite term without any compensation to the landlord or any redress other than the recovery of possession at the conclusion of a possibly long continued litigation. It is hardly conceivable that the parties had any such possi-

bility or purpose in mind when the lease was executed. In *Dyer* v. *Wightman,* 66 Pa. St. 425, Mr. Justice SHARSWOOD remarks that

"It is incontrovertible that nothing but a surrender, a release or an eviction can, in whole or in part, absolve the tenant from the obligation of his covenant to pay the rent."

This statement is amply justified by numerous authorities and appears to be fundamental. A contract which is designed to disregard a doctrine so well established should be expressed in language so clear and unmistakable as to leave no doubt of its meaning. The clause in controversy appears to be unusual, since counsel have not called our attention to anything like it in the authorities and our own investigation has disclosed nothing of a similar character in the reported cases. While forfeiture clauses in leases are uniformly construed to be provisions for the benefit of the landlord, Section 19 of this agreement was manifestly inserted in the interest of the tenant, and it seems clear to us that when read in connection with Section 21, it provides that after the building is erected and insured against loss by fire the lessee may surrender the lease, restore the property to the landlord and be exempt from any liability except arrears of rent or preceding breach of covenant. The answer does not plead a surrender or eviction and there is no evidence of such facts in the record. The clause relied upon does not constitute a release from the obligation to pay arrears of rent and the judgment is therefore affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE HARRIS and MR. JUSTICE BURNETT concur.

BURNETT, J., Concurring Specially.—I agree with the result reached by Mr. Justice BENSON in this case, but for reasons different from those which' he assigns for his opinion. In the lease there is a distinct, express covenant to pay the monthly rental reserved. In addition thereto the parties have inserted a condition giving a right to the landlord to re-enter and oust the lessee

"without being taken or deemed guilty in any manner of trespass and without prejudice of remedies which otherwise might be used for arrears of rent or preceding breach of covenant."

It is thus explicitly provided that the landlord has two remedies, in choice of which he has the option. Without disturbing the possession of the tenant the lessor may sue on the covenant to pay rent as often as there is an installment due, and the exercise of this remedy contemplates the continuance of the lease without destruction of the term. On the other hand, the privilege of re-entry may be enforced by ejectment to recover the possession, with damages, or by the almost summary procedure of forcible entry and detainer. Eviction thus accomplished works a destruction of the lease, a consequence not contemplated in the exercise of the other remedy by action on the covenant to pay rent. But it is said in the lease that:

"It is mutually understood and agreed that the liability of the lessee for breach of any of the covenants or agreements herein provided shall be limited to forfeiture of this lease and all of the improvements, save and except such additional penalties as are provided for failure to build and insure, as hereinbefore provided."

This quoted excerpt is designed merely to soften the asperity of eviction if that remedy is employed.

That this is the correct application of that clause is manifest from the statement that eviction may be enforced "without prejudice to any remedies which might otherwise be used for arrears of rent."

This construction harmonizes and gives effect to all the language of the instrument. To hold otherwise is to say that a perfectly responsible tenant may neglect to pay his rent during the whole term, if he chooses, becoming greatly indebted on the strength of his ability to pay. More than that, he remains in possession of the demised premises, perhaps stoutly combating the lessor's right to re-enter. It would not be right to say that under such circumstances, after being driven to the last ditch, he could gain acquittance of his obligation and pay his just debt by merely vacating the premises. That would be greatly to the prejudice of remedies which otherwise might be used to recover arrears of rent.

It would have been competent for the parties to stipulate that at its option the lessee could surrender the realty and so terminate the lease and the liability upon arrears of rent, but they did not so covenant. The language of their contract is utterly opposed to that conception. A surrender cannot be effective without an acceptance by the lessor, either express or by operation of law: *Ladd* v. *Smith,* 6 Or. 316; *Meagher* v. *Eilers' Music House,* 77 Or. 70 (150 Pac. 266). To countenance the position taken by the defendant would be to destroy the right of the landlord to elect between the two express remedies afforded by the terms of the lease, and that, too, at the pleasure of the tenant, based upon a breach of its contract. The landlord cannot be driven to abandon either of his remedies by the election of the tenant to violate its own covenant. For these reasons, the judgment of the Circuit Court ought to be affirmed.